McIlvaine, J.,
dissenting. The fund to be distributed is insufficient to satisfy the liens. The liens are held by three classes or grades of creditors, which have been tersely designated 'as transcript, mortgage, and judgment creditors. These liens accrued, in point of time, in the order named, and I affirm that the rights of these creditors must be preferred in accordance with the exact order of time in which their liens attached. The first in time is first in right; the' second in time, second in right; and the last in time, last in right.
The right of each class depends solely upon statutory law. The right of the judgment creditor is founded on section 421 of the code, which provides : “ The lands and tenements of the debtor, within the county where the judgment is entered, shall be bound for the satisfaction thereof, from the first day of the term at which judgment is rendered.” The right of the mortgage creditor is based on the act of March 18, 1838, which provides : “That all mortgage deeds do and shall take effect and have preference from the time the same are delivered to the recorder of the proper county, to be by him entered on record.” - The case shows that the mortgage was delivered for reéord previous to the first day of the term at which the judgment was rendered; hence it is perfectly clear that, as between the *281 mortgage creditor and the judgment creditor, the latter has no right to the fund until the former is fully satisfied.
The right of the transcript creditors rests upon section 490 of the code, which provides: “ Such judgment, if the transcript shall be filed in term time, shall have a lien on the real estate of the judgment debtor from the day of filing; if filed in vacation, as against the debtor, it shall have a lien from the day of filing, but, as against other transcripts filed in vacation and judgments rendered at the next term of the court of common pleas, it shall have a lien only from the first day of the next term of said court.” The case shows that these transcripts were filed in vacation next preceding the term at which the judgment was rendered, and before the time when the mortgage was delivered for record. Hence, it is conceded that the lien of the transcript creditors is superior to the lien of the mortgage creditor; and it has been shown that the lien of the mortgage creditor is superior to that of the judgment creditor.
The whole difficulty in the case is in determining the relative rights, under section 490, between the transcript creditors and the judgment creditor. It is assumed that their rights are equal. This I deny. I concede, that as between themselves, their liens are concurrent; but as between themselves, the lien of neither commenced to run until the lien of the mortgage had vested ; and yet, as between the transcript creditors and the mortgagee, the liens of the former vested before the mortgage was delivered for record.
The solution of the difficulty, however, is plain and easy. It is found in the answer to this question : "What right did the transcript creditor secure by the filing of a transcript of his judgment ? The statute answers: Such judgment as against the debtor shall be a lien on the real estate of the debtor from the day of filing. "When the transcript lien was thus secured, the real estate of the debtor was not incumbered by either the mortgage or subsequent judgment, so that the entire estate of the debtor was bound for the *282 payment of the transcript lien. Such, unquestionably, is a true statement of the legal right of the transcript creditors, upon the facts existing on the day of the filing of the transcripts; and as between them and the mortgagee, who subsequently came into the shoes of the debtor, the right to appropriate the entire estate of the debtor to the payment of their claims, if necessary, is beyond dispute. The right, however, of the transcript creditors to appropriate the entire estate, if necessary, to the payment of their .claims, is subject, by the law under which it was secured, to a condition thus expressed : “ But as against' other transcripts filed in vacation and judgments rendered at the next term of the court of common pleas, it (such transcript) shall have a lien only from the first day of the next term of said court.” So that while the transcript creditor is entitled to full payment, as against the subsequent mortgagee, he is only entitled to full payment, as against subsequent judgments, which become liens on the first day of the succeeding term, when the estate of the debtor on which the liens attach is sufficient to pay all the judgment liens. While there is no provision for letting in a subsequent mortgage until such transcript creditor is fully paid, there is, likewise, no provision for letting in subsequent judgments until all mortgages prior thereto are fully satisfied. The true rule, therefore, for distributing the proceeds of such estate is apparent. The transcript creditor is entitled to such portion of the proceeds as he would receive if there had been no mortgage, and the mortgagee, as if there had been no subsequent judgments.
The proposition, that the transcript creditor, by filing his transcript, secured a lien only on , so much of the debtor’s estate as was equal in value to the amount of his judgment, is a fallacy; and it is equally fallacious to hold that such transcript lien was secured for the benefit of subsequent judgment creditors. The lien of the transcript attached to the whole estate, aud for the sole benefit of the transcript creditor. The only limitation upon his right is found in the lien itself, which is declared to be concurrent *283 with that of a subsequent judgment. But a subsequent judgment creditor has no interest in the lien of the 'transcript creditor. Ilis rights must be worked out through the strength of his own lien, and not through that of the transcript creditor. There is no community of interest between these parties. Their claims are as adverse, between themselves, as they are against the intervening mortgage. No proposition can be plainer than this one. It is apparent on the face of the statute. The decree helow took from the fund realized from the sale of this estate a sum equal to the amount of the transcript judgments, and divided the same, pro rata, among the transcript and subsequent judgment creditors, and gave the balance to the mortgage creditor. Now-, the prorating of the amount of the transcript judgments among the transcript and subsequent judgment creditors, must have been decreed upon either one or the other of the following grounds: 1. That all these judgment creditors had a joint or common interest in the lien of the transcripts; or 2. That the liens of the several judgments were equal in point of right. I have already shown that the first theory is false, and the second can only be true on the hypothesis that the several liens were equal in point of time. There is no doubt the decree was based on this latter hypothesis. It is true that the statute makes them to be concurrent; but in order to make them concurrent, as between themselves, the inception of the transcript lien is expressly postponed to the date of the inception of the latter judgment lien; and, therefore, if the equality of these several liens, as among themselves, can be maintained, it is clear that they must all be postponed to the lien of the mortgage, which antedates the time fixed by the statute, as the commencement of the concurrent liens of the judgments; while the court below, in order to maintain the supposed equality among all the judgment creditors, must have advanced, contrary to the express provision of the .statute, the lien of the subsequent judgment to the date of the filing of the transcript, in order to give it preference over the intervening mortgage.
*284 The true meaning of this section (490) of the code is found in its plain and unequivocal terms; hence, liens of the transcripts and the subsequent judgment became concurrent aud equal in all respects, from and after “ the first day of the next term of said court,” and then only in case no intervening rights had accrued. Where the rights of third parties have intervened, the prior lieu of the transcript is preserved; for the statute provides that the transcript shall have a lien from the day of filing the same, as against the debtor, aud, of course, against any one standing in the debtor’s shoes. Nor does the intervention of such rights create, enlarge, or advance the right of the subsequent judgment creditor. The only lien of such creditor is created by section 421 of the code, which binds the debtor’s lands aud tenements from and after the first day of the term at which the judgment is rendered; and such lien is inferior to a prior mortgage, whose rights are secured under the mortgage act.
The only right given to such subsequent judgment creditor, by section 490 of the code, is to insist that the residue of the fuud, after satisfying the prior mortgage, shall not be reduced by the payment to the transcript creditors of a greater portion of the fund than they would have been entitled to receive if the mortgage had not intervened.
Again; in my judgment, the construction given to section 490, by the court below, would necessarily lead to this absiird result, namely: it would give to the subsequent judgment creditor a pro rata share of the fund secured by the transcript lien in a case where the intervening right was acquired by an absolute purchase of the estate as well as by the mortgage deed.
It has been suggested that my construction of these statutes is unsound for the reason, that it enlarges the right secured by the mortgage, in case a judgment be taken after the lien of the mortgage is vested, or in other words, when the mortgage lien attached it was subject to the payment in full of the transcript judgment, whereas, by reason of a subsequent judgment, which is admitted to be inferior *285 to tbe mortgage, the right of the mortgagee is postponed only to a partial payment of transcript judgments.
The trouble with this suggestion is that, as a legal proposition, the premise is false. I admit that when the mortgage lien attached it was inferior to the transcript liens, and that it must ever remain so; but the extent of the right secured by the transcript creditors was not then ascertained or ascertainable. The extent of that right depended on the fact whether or not a subsequent judgment would be rendered. The lien of the transcript creditors was subject to this future contingency, whereas, the mortgage lien was subject only to the rights of the transcript creditors, which rights could be determined only by future events. So that the lien of the mortgage is no more'enlarged by the subsequent judgment than it would have been by a partial payment of the transcript judgments, and in a legal sense such payment -would not have affected the legal status of the mortgage creditor. His lien remains the second lien upon the premises as it was from tbe date of the record of the mortgage. Nothing more, nothing less.
The decree below involves the proposition that the transcript creditors, in their effort to secure themselves, become trustees for the benefit of the subsequent judgment creditors. A lien, which was intended by the statute for their own benefit, is converted, by judicial legislation, into a trust for themselves and others, simply because a mortgage lien, inferior to their own, is created and declared, by statute, superior to subsequent judgment liens. To illustrate this proposition, we will suppose, in approximation to the facts of this case, that the amount of the transcript judgments was $250—the mortgage $1,000, the subsequent judgment $750, the value of the estate $1,000. If the mortgage had not intervened, the judgments would have been paid in full. But the mortgage having intervened, the $250, secured by the transcript liens, are distributed pro rata between them and the subsequent judgment creditor—giving one-fourth or $>62.50 to the transcript creditors, and the balance secured by their liens, to wit, $187.50 to the subsequent judgment *286 creditor, who acquired no lien until the whole estate, plus $250, had been consumed by creditors, whom the law preferred to him.. This decree does not only affect the mortgagee, but it takes from the parties first in time and first in right—the transcript creditors—three-fourths of their security, and gives it to a party whose lien first attached, when the estate was insufficient to satisfy pre-existing liens.
While I regret the necessity for dissenting in this case, I may in justification say that, in my opinion, the exact question, in principle, has been heretofore decided by this court, in the very carefully considered case of Choteau v. Thompson, 2 Ohio St. 114. That case, as I understand the majority of the court, is not intended to be overruled. An effort is made, however, to distinguish between it and the present case, but in my judgment, the distinction is without a. difference in principle. In that case, as in this, a mortgage lien intervened between two other liens of different dates, but which were declared to be concurrent as between themselves. The cases are sought to be distinguished on the ground that the supposed equality, between the first and last liens in that case, was determined by the court upon a certain construction of the statute under which they arose, -while in the present case, the equality is declared by the statute in express terms. In each case, I insist, the question was controlled, by force of the statute. In Choteau’s case the lien which preceded and the lien which succeeded the mortgage were created under the mechanic’s lien law, and in determining that these liens were concurrent, the court considered many facts and circumstances not germain to the case before us; but after the question of equality was ascertained in that case, it stood, upon all fours, with the present; aud hence, in determining the question in this, by the authority of that case, it is of no importance what facts and circumstances -were considered by the court in settling the concurrence of the first and third liens.
For all the purposes of this case, Choteau’s case may be stated thus: A lieu was secured under the mechanic’s *287 lien law upon certain real estate. This lien was subject to a ratable distribution of the proceeds of the property with other hens subsequently secured under the same statute. Afterward a mortgage lien was created on the same property, and after that other liens under the mechanic’s lien law were taken. The case was before this court on appeal reserved, and the fund was directed to be divided among the several leinors as follows: That the leinor first in time should receive what he would be entitled to receive, if the mortgage had not intervened; the residue should be applied to the satisfaction of the mortgage, and if any balance remained, it should be given to the holders of the subsequent liens taken under the mechanic’s lien law.
My judgment is in eutire accord with this decision.
Gilmore, J., concurred in the dissenting opinion